**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) | Judge Charles M. Walker |
|  | ) |  |
| **AMARILLO PLATINUM, LLC,** *et al.,*[1] | ) | <u>Case Number</u> |
|  | ) | 3:24-bk-02447 |
| Debtors. | ) |  |
|  | ) | Jointly Administered |

**CHAPTER 11 PLAN OF REORGANIZATION FOR DEBTOR**
**MIDLAND PLATINUM II, LLC**

## ARTICLE I
SUMMARY

1.01    This Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "<u>Plan</u>") proposes to pay the creditors of Midland Platinum II, LLC (the "<u>Debtor</u>") as set forth herein.

1.02    This Plan provides for four (4) classes of secured claims; one (1) class of unsecured claims; and one (1) class of equity interests of the Debtor. Unsecured creditors holding allowed claims in Class 5 will receive *pro-rata* distributions over a period of five (5) years, or upon acceleration by the Debtor at the Debtor's election. This Plan also provides for the full payment of unclassified claims for administrative claims, priority tax claims, and quarterly fees to the United States Trustee.

1.03    All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides additional information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

## ARTICLE II
DEFINITIONS

<u>Definitions and Rules of Construction</u>. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the below listed definitions. Therefore, the following terms, when used in this Plan, shall have the following meanings:

---

[1] The jointly administered cases are as follows: *In re Amarillo Platinum, LLC*, Case No. 3:24-bk-02447; *In re Midland Platinum, LLC*, Case No. 3:24-bk-02448; and *In re Midland Platinum II, LLC*, Case No. 3:24-bk-02449 (collectively, the "Debtors,") with each individually being a "Debtor."

a. "Adequate Protection Payments" shall mean payments made to creditors holding claims secured by Property of the Debtor, from the Petition Date to the Effective Date, whether or not such payments were made directly to the creditor or deposited into an account, and whether or not such payments were made pursuant to an order of the Court.

b. "Administrative Claim" shall mean any claim including, but not limited to, claims for compensation of professionals made pursuant to § 330 of the Bankruptcy Code and claims entitled to administrative priority pursuant to §§ 507(a)(1) and 503(b) of the Bankruptcy Code. Fees due to the United States Trustee pursuant to 28 U.S.C. § 1930 shall also be included in this definition.

c. "Allowed Claim" shall mean a Claim that is evidenced by a proof of claim that has been filed under § 501 or deemed filed under § 1111(a), and any timely filed objection has been resolved by a final non-appealable order. The amount of any Claim shall be reduced by any post-petition payments made to the creditor prior to the Effective Date. As used herein, Allowed Claim shall include claims against property of the estate that may be allowed as secured under § 506 of the Bankruptcy Code.

d. "Allowed Secured Claim" shall mean a Secured Claim in an amount equal to the lesser of (i) the value of the Property securing the Allowed Claim set under the Plan or otherwise determined by the Court at Confirmation, or (ii) the amount of the Allowed Claim plus post-petition interest and fees accrued from the Petition Date until the Effective Date as allowed under § 506(b).

e. "Allowed Unsecured Claim" shall mean an Allowed Claim that is not otherwise an Allowed Secured Claim or an Allowed Claim entitled to priority under § 507 of the Bankruptcy Code.

f. "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

g. "Chapter 11" shall mean Chapter 11 of the Bankruptcy Code.

h. "Claim" shall mean a claim against the Debtor as defined in § 101(5) of the Bankruptcy Code.

i. "Claimant" shall mean any creditor or party in interest.

j. "Confirmation" shall mean the entry by the Court of an order confirming the Plan.

k. "Confirmation Hearing" shall mean the hearing on the confirmation of the Plan.

l. "Court" shall mean the United States Bankruptcy Court for the Middle District of Tennessee and the Judge assigned to this case.

m. "Debtor" shall mean Midland Platinum II, LLC with the status and rights conferred to Debtor-in-possession by § 1107 of the Bankruptcy Code.

n. "Effective Date" shall mean the later of (i) the first business day of the second full month following Confirmation, or (ii) the first business day after an appeal of an order confirming this Plan has become final and unappealable. For purposes of calculations and disbursements proposed within this Plan, an Effective Date of **August 1, 2025** is presumed. However, the Debtor may at any time designate an earlier Effective Date by filing written notice thereof with the Court and serving such notice on all creditors and parties in interest.

o. "Hotel" shall mean the real property located at 1505 Tradewinds Boulevard, Midland, TX 79706 upon which the Debtor operates a Courtyard by Marriott hotel under license with Marriott International, Inc.

p. "Interests" shall mean the ownership interests in the Debtor.

q. "Petition Date" shall mean the date this case was filed, which is **July 1, 2024**.

r. "Plan" shall mean this Chapter 11 Plan as the same may be modified from time to time in accordance herewith or pursuant to applicable law.

s. "Plan Payments" shall mean all funds remitted by the Debtor, the Reorganized Debtor, and/or third parties on behalf of the Debtor or Reorganized Debtor pursuant to the Plan.

t. "Property" shall mean all assets in which the Debtor have an interest as of the Effective Date, to the extent of the Debtor's interest as of the Petition Date.

u. "Reorganized Debtor" shall mean the Debtor after Confirmation.

v. "Secured Claim" shall mean an Allowed Claim that is allowed as a secured claim pursuant to § 506(a). If a value fixed by this Plan is not approved by the Court at Confirmation, the Plan will apply the value determined by the Court to be appropriate.

**ARTICLE III**
CLASSIFICATION OF CLAIMS AND INTERESTS

3.01    Class 1. This class shall consist of the Allowed Secured Claim of LBC2 Trust ("LBC2") related to its consensual lien on the Hotel.

3.02    Class 2. This class shall consist of the Allowed Secured Claim of TaxCORE Lending, LLC related to its lien on the Hotel for 2023 real property taxes.

3.03    Class 3. This class shall consist of the Allowed Secured Claim of the Midland Central Appraisal District related to its statutory lien on the Hotel for 2024 real property taxes.

3.04    Class 4. This class shall consist of the Allowed Secured Claim of the Midland Central Appraisal District related to its statutory lien on the Hotel for 2024 ad valorem taxes.

3.05     Class 5. This class shall consist of the Allowed Unsecured Claims not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, Claims arising out of the rejection of any executory contract or unexpired lease, each Allowed Claim secured by a lien on Property in which the Debtor has an interest to the extent that such Claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. §§ 522(f), 544, 545, 547, 548 or 549 , and each such Claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such Claim exceeds the amount which such Claim may be afforded priority thereunder.

3.06     Class 6. This class shall consist of the equity Interests in the Debtor.

**ARTICLE IV**
TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS, AND U.S. TRUSTEE FEES

4.01     Unclassified Claims. Pursuant to § 1123(a)(1), administrative expense claims allowed under § 507(a)(2) and priority tax claims under § 507(a)(8) are not in a class.

4.02     Administrative Claims. Except as otherwise provided under the Plan, each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Notwithstanding the foregoing, the Debtor shall pay all United States Trustee quarterly fees when due through case closure. All other ordinary course expenses shall be paid when due in the ordinary course of business.

4.03     Priority Tax Claims. With respect to a claim of a kind specified in § 507(a)(8), the holder of such claim will receive on account of such claim regular installment cash payments of a total value, as of the Effective Date, equal to the allowed amount of the priority portion of such claim, over a period not to exceed sixty (60) months from the Petition Date. No penalty shall accrue on such priority tax claims after the Petition Date. The non-priority general unsecured portion(s) of the allowed claims of the holders of priority tax claims, including the penalty and interest accrued thereon, shall be treated in the unsecured class within this Plan, and shall be subject to any discharge granted to the Debtor under § 1141.

4.03.1     State and County Taxes other than Ad Valorem Property Taxes. The allowed priority amount owed to the Texas Comptroller of Public Accounts and any other state or county taxing authority shall be paid in full at 8.50% interest[2] via deferred cash payments in monthly installments beginning on the Effective Date and continuing through and including June 1, 2029. Based on the anticipated Effective Date of August 1, 2025, the Debtor anticipates 47 monthly payments. Given the filed priority claims, which total $63,795.91 (*See* Claim Nos. 4-6), the Debtor's estimated monthly payment shall be **$1,600.57.**

4.04     Cure Payments for Executory Contracts. Article VI of this Plan identifies the treatment of the cure claims of the counterparties to the Debtor's assumed executory contracts.

---

[2] Statutory non-bankruptcy interest pursuant to 11 U.S.C. § 511(a) and Tex. Tax Code § 111.060.

4.05    Post-Confirmation Tax Claims. All tax claims that are incurred after Confirmation shall be payable when due under applicable non-bankruptcy law.

4.06    Impaired Classes of Claims. Each class of creditors is impaired under the Plan other than the Debtor's equity interest holders, whose interests shall remain unaffected by the Plan.

**ARTICLE V**
TREATMENT OF CLAIMS, LIENS AND INTERESTS UNDER THE PLAN

Claims and Interests shall be treated as follows under this Plan:

| *Class No. 1* | *Holder of Claims or Interests:* <br> LBC2 Trust <br> [ECF Claim No. 7] | *Impaired* |
|---|---|---|
| | *Plan Treatment* | |

This class shall consist of the claim of LBC2 to the extent allowed as a secured claim under § 506 of the Code. LBC2 has a recorded Deed of Trust to secure a first-position lien against the Hotel subject only to statutorily priming tax liens. The Allowed Secured Claim of LBC2 related to the Hotel shall be allowed in the amount owed of **$11,663,713.10**,[3] less any amounts received by the claimant under any order granting adequate protection thereto, with such amounts being applied to reduce the principal amount of the Allowed Secured Claim.

This Allowed Secured Claim shall be paid under the Plan as follows:

(i)    Twenty-four monthly payments on the outstanding principal balance of the Allowed Secured Claim (net of any Adequate Protection Payments received) amortized on a twenty-five-year amortization schedule at a rate of 7.00% per annum beginning on the Effective Date and continuing for twenty-four months thereafter. Assuming a claim balance of $11,663,713.10, this would result in monthly payments of **$77,598.97.**

(ii)    On or before the first day of the twenty-fifth month following the Effective Date, the Debtor shall pay the remaining balance of the Allowed Secured Claim in a lump sum balloon payment.

(iii)    Any terms of the existing note and security agreement evidencing LBC2's claim which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan.

LBC2 shall retain its lien in the collateral supporting its Allowed Secured Claim until the final of the above payments, or through acceleration of such payments by the Debtor. Upon receipt of such final payment, LBC2 shall release its lien on the collateral and provide such release to the Debtor for recordation with the register of deeds in the appropriate county.

---

[3] *See* ECF Claim No. 12.

| Class No. 2 | Holder of Claims or Interests:<br>TaxCORE Lending, LLC | Impaired |
|---|---|---|

| Plan Treatment |
|---|

This class shall consist of the Allowed Secured Claim of TaxCORE for 2023 property taxes secured on the Hotel. The Class 2 Claim shall be allowed in the amount of **$99,097.54.**

This Claim shall be paid under the Plan as follows:

     (i)     Pursuant to 11 U.S.C § 1129(a)(9)(D), the Class 2 Claim shall be paid in full in equal monthly installments on or before the date that is sixty (60) months from the Petition Date.

     (ii)     Pursuant to 11 U.S.C. § 511(a), interest shall accrue at the statutory non-bankruptcy interest rate of **12%** per annum.

     (iii)     Presuming an Effective Date of August 1, 2025, the regular monthly payment on the Class 2 Claim would be **$2,652.95**.[4]

     (iv)     The first monthly installment payment will be due on the Effective Date, and subsequent payments will be due on the first day of each month thereafter until the Allowed Secured Claim is paid in full.

TaxCORE shall retain its lien in the collateral supporting this Claim until the final of the above payments, or through acceleration of such payments by the Debtor. Upon receipt of such final payment, TaxCORE shall release its lien on the collateral.

| Class No. 3 | Holder of Claims or Interests:<br>Midland Central Appraisal District<br>[ECF Claim No. 1] | Impaired |
|---|---|---|

| Plan Treatment |
|---|

This class shall consist of the Allowed Secured Claim of Midland Central for 2024 property taxes secured on the Hotel. The Class 3 Claim shall be allowed in the amount of **$105,648.32.**

This Claim shall be paid under the Plan as follows:

     (i)     Pursuant to 11 U.S.C § 1129(a)(9)(D), the Class 2 Claim shall be paid in full in equal monthly installments on or before the date that is sixty (60) months from the Petition Date.

     (ii)     Pursuant to 11 U.S.C. § 511(a), interest shall accrue at the statutory non-bankruptcy interest rate of **12%** per annum.

     (iii)     Presuming an Effective Date of August 1, 2025, the regular monthly payment on the Class 3 Claim would be **$2,828.32**.[5]

---

[4] This number represents payment in full at 12% per annum amortized over 47 months.

[5] This number represents payment in full at 12% per annum amortized over 47 months.

(iv)     The first monthly installment payment will be due on the Effective Date, and subsequent payments will be due on the first day of each month thereafter until the Allowed Secured Claim is paid in full.

Midland Central shall retain its lien in the collateral supporting this Claim until the final of the above payments, or through acceleration of such payments by the Debtor. Upon receipt of such final payment, Midland Central shall release its lien on the collateral.

| Class No. 4 | Holder of Claim or Interest: Midland Central Appraisal District [ECF Claim No. 2] | Not Impaired |
|---|---|---|
| | Plan Treatment | |

This class shall consist of the Allowed Secured Claim of Midland Central for 2024 ad valorem taxes secured on the Hotel. The Class 4 Claim shall be allowed in the amount of **$10,022.81.**

This Claim shall be paid under the Plan as follows:

(i)     Pursuant to 11 U.S.C § 1129(a)(9)(D), the Class 2 Claim shall be paid in full in equal monthly installments on or before the date that is sixty (60) months from the Petition Date.

(ii)     Pursuant to 11 U.S.C. § 511(a), interest shall accrue at the statutory non-bankruptcy interest rate of **12%** per annum.

(iii)     Presuming an Effective Date of August 1, 2025, the regular monthly payment on the Class 3 Claim would be **$268.32**.[6]

(iv)     The first monthly installment payment will be due on the Effective Date, and subsequent payments will be due on the first day of each month thereafter until the Allowed Secured Claim is paid in full.

Midland Central shall retain its lien in the collateral supporting this Claim until the final of the above payments, or through acceleration of such payments by the Debtor. Upon receipt of such final payment, Midland Central shall release its lien on the collateral.

| Class No. 5 | Holder of Claim or Interest: All Allowed General Unsecured Claims | Impaired |
|---|---|---|
| | Plan Treatment | |

This class shall consist of the Allowed Unsecured Claims not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, Claims arising out of the rejection of any executory contact or unexpired lease, each Allowed Claim secured by a lien on Property in which the Debtor has an interest to the extent that such Claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. §§ 522(f), 544, 545, 547, 548 or 549, and each such Claim of the class described in 11

---

[6] This number represents payment in full at 12% per annum amortized over 47 months.

U.S.C. § 507(a), to the extent that the allowed amount of such Claim exceeds the amount which such Claim may be afforded priority thereunder.

This Plan will provide a total pool of $20,000 to be paid, on a *pro-rata* basis, to the claimholders in this class over a period not to exceed five (5) years from Confirmation. Distributions shall commence to claimants in this class, on a *pro-rata* basis, on or before the first anniversary of the Effective Date and each subsequent anniversary in the amount of $4,000.00 for a total of five distributions. The Debtor reserves the right to compromise and settle any claims within this class, post-Confirmation, with the consent of the holder(s) thereof.

| *Class No. 6* | *Holder of Claim or Interest:* Equity Interests of the Debtor | *Not Impaired* |
|---|---|---|
| | *Plan Treatment* | |
| The equity Interests of the Debtor shall remain unaffected by this Plan. | | |

*In the event any of the claimants listed or scheduled as secured file a proof of claim stating that no part of the claim is secured, then the claim shall be deemed entirely unsecured and treated as such pursuant to this Plan.*

*The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amount listed in the Debtor's schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).*

## ARTICLE VI
## EXECUTORY CONTRACTS

The known executory contracts or unexpired leases of the Debtor, and intentions regarding the same are listed as follows:

| Name of Other Party to Executory Contract/Lease | Description | Cure Treatment Per 11 U.S.C. § 365 |
|---|---|---|
| Marriott International, Inc. 7750 Wisconsin Ave. Bethesda, MD 20814 | Assume *Courtyard by Marriott Franchise Agreement between Marriott International, Inc. and Amarillo Platinum, LLC Dated January 25, 2005.* | Debtor to cure all monetary and non-monetary defaults under contract within one (1) year from the Effective Date of the Plan. Monetary defaults as of the Petition Date, if any, shall be cured with 0.00% interest. |
| Firetrol Protection Systems 1001 Avenue B Lubbock, TX 79401 | Assume any unmatured executory contract for fire monitoring service therewith. | No known arrearage as of the Effective Date. Upon the Effective Date, the Debtor shall be deemed current on the contract with no cure required. |

| | | |
|---|---|---|
| Republic<br>8220 West Highway 80<br>Midland, TX 79706 | Assume any unmatured executory contract for waste disposal services therewith. | No known arrearage as of the Effective Date. Upon the Effective Date, the Debtor shall be deemed current on the contract with no cure required. |
| Scent Air<br>3810 Shutterfly Road, Suite 900<br>Charlotte, NC 28217 | Assume any unmatured executory contract for lobby equipment therewith. | No known arrearage as of the Effective Date. Upon the Effective Date, the Debtor shall be deemed current on the contract with no cure required. |
| Terminex<br>P.O. Box 802155<br>Chicago, IL 60680 | Assume any unmatured executory contract for pest control therewith. | No known arrearage as of the Effective Date. Upon the Effective Date, the Debtor shall be deemed current on the contract with no cure required. |
| Uniguest<br>P.O. Box 7410716<br>Chicago, IL 60674 | Assume any unmatured executory contract for computer services, hardware, and software therewith. | No known arrearage as of the Effective Date. Upon the Effective Date, the Debtor shall be deemed current on the contract with no cure required. |

Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under the Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. Any creditors that believe they hold claims with respect to contracts rejected hereunder shall file a proof of claim on or before the date that is **30 days from entry of an order confirming this Plan of Reorganization**. Any such timely filed allowed claims will participate in the distribution for unsecured creditors set out within the Plan.

### ARTICLE VII
### ALLOWANCE AND DISALLOWANCE OF CLAIMS

7.01    Objection to Claims. The Debtor or any party in interest may file an objection to any Claim in any class on or before the earlier of (a) 90 days after the entry of a Confirmation Order, or (b) the date on which the Debtor files a Motion for Final Decree pursuant to 11 U.S.C. § 350. Objections not filed within such time will be deemed waived. If any Claim or portion thereof is challenged by an objection, the Claim shall be treated as a disputed Claim.

7.02    Disputed Claim. A disputed Claim is Claim that has not been Allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of Claim has been filed or deemed filed, and the Debtor, or another party in interest has filed an objection; or (ii) no proof of Claim has been filed, and the Debtor has scheduled such Claim as disputed, contingent, or unliquidated.

7.03     Delay of Distribution on Disputed Claims. No distribution will be made on account of a disputed Claim unless such Claim is Allowed by a final non-appealable order. Notwithstanding this delay of distribution on disputed Claims, distribution may, in the Debtor's sole discretion, be made on any portion of such disputed Claim which is undisputed, pending resolution of the Claim allowance as a whole.

7.04     Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed Claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. Following Confirmation and closing of the case, the Debtor shall retain the authority to settle and compromise Claims with consent of the settling Claimholder, and without the need for Court intervention or approval.

7.05     Distribution Address and Mailing Method. Any distribution or payment to a creditor shall be sent by first class mail to the creditor's address indicated on the proof of Claim filed by that creditor in these Bankruptcy Cases or, if no proof of Claim has been filed, to that creditor's most recent address indicated on Debtor's Schedules or known to Debtor. If a creditor holds an Allowed Claim by virtue of a transfer of such Claim pursuant to Rule 3001 of the Federal Rules of Bankruptcy Procedure, then distributions to the holder of such Claim shall be sent to the address set forth in evidence of the transfer filed with the Bankruptcy Court. Claimants may change the address to which distributions are sent through amendment of their proof of Claim or written notice delivered to Debtor's counsel. Claimants are responsible for keeping Debtor (and Trustee, where applicable) informed of their current address for receipt of distributions or other payments under this Plan.

7.06     Claims Subject to Insurance Coverage. With respect to any Claim for which Debtor has insurance coverage, the Claim will be treated as an Allowed Claim only to the extent that the holder of the Claim can establish that such Claim is not recoverable to any extent under the applicable Debtor's insurance. Unless the holder obtains a Final Order establishing that the Claim is not recoverable to any extent under such Debtor's insurance, such Claim is automatically disallowed and will be entitled to no distribution.

7.07     Precluded Distributions. No distribution shall be made in violation of Bankruptcy Code § 502(d) to an Entity or transferee liable for recoverable property for an avoidable transfer. Debtor shall notify each affected creditor of any contention that Bankruptcy Code § 502(d) prohibits any distribution to such creditor. If such notice is given, the Claim held by such creditor will be treated as a Disputed Claim hereunder.

7.08     Treatment of Contingent or Unliquidated Claims. Until such time as a contingent Claim becomes fixed and Allowed, such Claim shall be treated as a Disputed Claim for purposes related to voting, allowance, and distributions under this Plan. Upon request of Debtor or any other party in interest, the Bankruptcy Court shall, in a summary proceeding for each such contingent Claim or unliquidated Claim, by estimation determine the allowance of each such contingent or unliquidated Claim for purposes of voting on this Plan.

7.09     Payment Dates. Unless specifically stated otherwise herein, with respect to any treatment under this Plan that provides for installment payments, the first such installment shall commence on or before the Effective Date. Whenever any payment or distribution to be made

under this Plan (installment or otherwise) shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next business day.

7.10    No Tax or Filing Fee. No governmental entity may tax any transfer of property pursuant to or in furtherance of this Plan or charge any tax or fee for the recording of, any release, deed, transaction, or other document executed pursuant to or in furtherance of this Plan.

7.11    No Interest or Attorney's Fees. Except as expressly provided for in this Plan, or Allowed by the Court, no interest, penalty, late charge, or attorney's fees is to be Allowed on any Claim subsequent to the Petition Date.

7.12    Voiding of Liens. Except for liens otherwise specifically provided to be retained under this Plan, Confirmation will void pursuant to § 506(d) all liens in excess of the Allowed Secured Claim.

## ARTICLE VIII
## CONFIRMATION AND FINAL DECREE

8.01    Confirmation. Confirmation of the Plan shall not occur unless the Court determines that it satisfies 11 U.S.C. § 1129.

8.02    Final Decree. At such time as this case has been substantially consummated, that is, when all administrative matters or issues requiring action or resolution by the Court have been completed or resolved, the Confirmation Order has become a Final Order, and payments under the Plan have commenced, the case may be closed. To close the case, the Debtor shall file a Notice of Substantial Consummation and a Motion for Final Decree. The Debtor shall continue to pay U.S. Trustee quarterly fees until the Final Decree is entered.

## ARTICLE IX
## MEANS FOR IMPLEMENTATION OF THE PLAN

9.01    Effective Date Status. The Debtor has remained Debtor-in-Possession and in control of its affairs since the Petition Date. There has been no examiner, restructuring officer, or other professional appointed to control the Debtor's affairs. Debtor anticipates that it will be able to successfully complete its obligations under the Plan and that the Plan is feasible. Creditors are instructed to look at the disclosures made herein, at the Debtor's Statements and Schedules, and at the monthly operating reports filed by the Debtor for information into the feasibility and propriety of the Plan.

9.02    Payments Funded by Ongoing Operations. Cash generated from Debtor's continued operations will generate sufficient cash flow to make all payments due under the Plan for the first two years thereof. On the second anniversary of the Effective Date, the Debtor shall have generated enough equity in the Hotel—both through satisfaction of secured debt, ordinary appreciation of the real property, and the considerable improvements to property contemplated under the Plan by the Debtor—to be able to refinance or sell the Hotel sufficient to satisfy the Plan's obligations when they come due.

9.03    Employment of Professionals. In the period after the Confirmation Date but before closing of the case, Debtor may continue to utilize the services of professional persons whose employment was approved at or prior to the Confirmation Date in completing administration of the case and in the consummation and performance of the Plan. Debtor is authorized to pay these Post-Effective Date expenses, including the fees of any accountants, employees, or agents, as such expenses come due pursuant to the Orders of the Court approving such appointment.

9.04    Assumption of Leases. Any party to an unexpired lease or executory contract that is assumed in connection with this Plan that asserts that Debtor has defaulted under that contract and whose cure amount is not stated by Debtor or who disagrees with Debtor's proposed cure amount shall file with the Court an application for allowance and payment of Cure Claim, identifying the amount allegedly due to cure any such defaults in accordance with Section 365(b)(1)(A) of the Code. Any such application must be filed prior to the Effective Date. The failure to file timely the application shall be deemed a full waiver of any rights available to the affected Claimant pursuant to Section 365(b)(1)(A) of the Code. All Cure Claims asserted pursuant to the Plan to which no objection is Filed or to which an objection is Filed but overruled by a Final Order of the Court shall become Allowed Cure Claims, unless Debtor timely files a Notice of Rejection Pursuant to the Plan. Notwithstanding anything in this section to the contrary, Debtor may reject any executory contract in the event Debtor determines that any Allowed Cure Claim renders assumption of that contract not in Debtor's best interest, and the other party to the contract shall be entitled to file a Class 5 Claim for damages arising from the rejection.

9.05    Causes of Action. Debtor will be responsible for evaluating, funding and pursuing any or none of the Causes of Action based on its reasonable business judgment and shall fund such amounts as Debtor, in its discretion, shall deem appropriate and reasonable. After the Effective Date, Debtor shall, in its sole and absolute discretion, be authorized to compromise and settle any of the Causes of Action, without Court approval or notice to any party, at any time, and for any consideration that Debtor believes to be in its best interest. Any recovery from any Cause of Action, including Avoidance Actions, either from litigation or settlement, will be used by Debtor or Reorganized Debtor for operations and/or to fund the payments due under the Plan.

9.06    Distribution on Allowed Claims. Distributions hereunder will be made only on Allowed Claims.

9.07    Early Payment. Nothing herein shall prohibit the Reorganized Debtor from making an early payment of an Allowed Claim, provided the funds used to pay that Claim will not cause a reduction of the distributions to the Allowed Unsecured Claims in amount. In addition, nothing herein shall be construed as imposing a temporal requirement on the Debtor to wait the proposed length of the Plan to satisfy any obligation under the Plan, and the Reorganized Debtor shall not be prohibited from making an early payment of the guaranteed amount to Class 5 Claims.

9.08    Settlement of Disputed or Undisputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim. If such a settlement and compromise is reached before Confirmation, court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure will be required. Following Confirmation, the Debtor shall retain the authority to settle and compromise claims with consent of the settling claimholder, and without the need for Court intervention or approval.

9.09    Determination of Interest Rate. If any interest rate fixed under this Plan is not approved by the Court, the applicable rate under the Plan shall be the rate determined to be allowable by the Court.

9.10    Retention of Property. Until the case is closed, the Debtor will continue to remain in possession of all Property and shall continue to pay U.S. Trustee fees as required.

9.11    Voiding of Liens. Except as otherwise provided under the Plan, Confirmation will void pursuant to § 506(d) all liens in excess of the Allowed Secured Claim.

9.12    Transfer of Assets. As of the Effective Date and except as otherwise provided herein, all Property of the Debtor will be retained by the Reorganized Debtor free and clear of all Claims.

9.13    Default Under Plan. Confirmation shall effect a cure of any existing default under a debt, and notwithstanding the provision of any lease or loan document that may survive the Confirmation, an event of default as to any Claim after Confirmation shall exist only if the Debtor (i) fails to make monetary payment when due under the Plan and that default is not cured within twenty (20) days following delivery of written notice of that default, (ii) fails to insure the Property securing the creditor's Claim for the value of the Property, or (iii) disposes of the Property securing the Claim, normal wear and tear excepted, without either the consent of the creditor holding the Claim, the satisfaction of the lien on that Property, or the payment of the net proceeds to that creditor.

9.14    Notice. Unless otherwise directed by the Debtor in writing, notices provided or required pursuant to this Plan be sufficient only if delivered by mail as follows:

> Midland Platinum II, LLC
> Attn: Vanessa Villa
> 4636 Lebanon Pike
> Box 333
> Hermitage, TN 37076

With copy to:    Henry E. ("Ned") Hildebrand, IV
> DUNHAM HILDEBRAND PAYNE WALDRON, PLLC
> 9020 Overlook Blvd., Suite 316
> Brentwood, Tennessee 37027
> ned@dhnashville.com

**ARTICLE X**
EFFECT OF CONFIRMATION

10.01   Vesting of Property. Except as otherwise expressly provided in the Plan, Confirmation of the Plan shall vest all the property of the Debtor's estate into the Debtor.

10.02  Property Free and Clear. Except as otherwise provided in the Plan, all Property shall be free and clear of all claims, liens and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all liens or encumbrances against all Property, unless such lien or encumbrance is specifically retained in the Plan.

10.03  Discharge of Debts and Discharge Injunction. Pursuant to 11 U.S.C. § 1141(d), upon entry of the Confirmation Order the Debtor shall be discharged from any debt that arose before the date of Confirmation and shall be entitled to the permanent protection afforded by 11 U.S.C. § 524.

10.04  Legal Binding Effect. The provisions of this Plan shall bind all Claimants, whether or not they accept this Plan or whether or not their Claim is impaired.

10.05  Effect on Third Parties. Nothing contained in the Plan or in the documents to be executed in connection with the Plan shall affect any Claimant's rights against any third party, except as otherwise expressly provided in this Plan and except that any creditor or party in interest may only recover from any third-party guarantor or co-obligor the amount owed to it in excess of the amount to be paid on the underlying obligation pursuant to the Plan.

10.06  Release of Claims. The consideration to be distributed under the Plan shall be in exchange for, and in complete satisfaction and release of, all Claims against the Debtor or any of their assets or properties, including without limitation any Claim accruing after the Petition Date and prior to the Effective Date.

10.07  Permanent Injunction. Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Claimants and persons who have held, hold or may hold Claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor on account of Claims against the Debtor, or on account of claims released pursuant to section 10.05 of the Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any Property; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtor arising from a Claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination in the Bankruptcy Court of the amount of any Claims that arose prior to the Effective Date. Claimants and parties asserting entitlement to payment of Administrative Claims incurred prior to the date of Confirmation and shall be permanently enjoined from asserting any Claim against the Debtor or its retained assets based upon any act or omission, transaction or other activity that occurred prior to the date of Confirmation, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such claim or interest is allowed under Section 502 of the Bankruptcy Code.

10.08  Exculpation. Except as otherwise provided in the Plan or Confirmation Order, the Debtor and the professionals for the Debtor shall neither have nor incur any liability to any entity or person for any act taken or omitted to be taken (exclusive of an act constituting fraud, gross negligence or intentional misconduct) in connection with or related to this Chapter 11 case, including, without limitation, actions related to the formulation, preparation, dissemination,

implementation, administration, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

## ARTICLE XI
### GENERAL AND MISCELLANEOUS PROVISIONS

11.01  Withdrawal of Plan. At the option of the Debtor, this Plan may be withdrawn at any time prior to Confirmation. Such option shall be exercised by filing with the Court a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case.

11.02  Retention of Claims. Pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, the Debtor shall retain each and every claim, demand or cause of action whatsoever which the Debtor may have had power to assert immediately prior to Confirmation, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Bankruptcy Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Bankruptcy Code.

11.03  Exemptions from Transfer Tax. The issuance, transfer or exchange of a security or the recording of any instrument evidencing the transfer of assets contemplated under the Plan, including the post-Confirmation sale of any Property, shall not be taxed under any law imposing a stamp tax or similar tax pursuant to § 1146(c) of the Bankruptcy Code.

11.04  Modification of the Plan. The Debtor may propose amendments or modifications of this Plan at any time prior to Confirmation. After Confirmation, the Debtor, with approval of the Court, and so long as it does not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the order of confirmation in such a manner as may be necessary to carry out the purposes and effect of this Plan. The foregoing provisions of this paragraph do not limit the ability of any party to modify the Plan under § 1127 and applicable rules.

11.05  Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

11.06  Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

11.07  Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

11.08  Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Tennessee govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

11.09  Continuing Jurisdiction of the Court. In addition to the continued jurisdiction after the Confirmation Date that is provided for as a matter of law by the Bankruptcy Code and Bankruptcy Rules, the Court shall retain exclusive jurisdiction for the following:

(a) To determine any and all objections to the allowance, extent, priority or nature of any Claims, the amount and proper classification of the Claim of any holder and the determination of such objections as may be filed to any Claims;

(b) To determine any and all applications for compensation and reimbursement pursuant to §§ 330 or 331 of the Bankruptcy Code;

(c) To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any Claims resulting from rejection thereof;

(d) To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court;

(e) To interpret, enter Final Orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan;

(f) To cause the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(g) To consider the modification of this Plan after the date of Confirmation as allowed pursuant to the Federal Rules of Bankruptcy Procedure and the Bankruptcy Code;

(h) Except as otherwise provided in this Plan, to make any determinations and to issue any Final Orders to enforce, interpret or effectuate the Plan;

(i) To enter a Final Order concluding and terminating this case;

(j) To review the reasonableness of any post-Confirmation professional fees paid by the Reorganized Debtor pursuant to Section 12.01 of this Plan; and

(k) To determine such other matters as may be provided for in the Confirmation Order.

## ARTICLE XII
## POST-CONFIRMATION PROFESSIONAL FEES AND CONTINUED PLAN EXECUTION

12.01  Professional Fees after Confirmation. In the period after the date of Confirmation, but before closing of the case, the Reorganized Debtor may continue to avail itself to the services of professional persons whose employment was approved at or prior to the date of Confirmation in completing administration of the case and in the consummation and performance of the Plan and, if necessary, employ additional professional persons to render services in and in connection with the case. With respect to services rendered and expenses incurred in or in connection with the

case by any professional person during such period, the professional person may render periodic billing thereafter to the Reorganized Debtor, who shall promptly pay the invoices, who shall promptly pay the invoices, subject to any objection being raised by the Reorganized Debtor. Pursuant to Section 11.09(j) of this Plan, the Court will retain jurisdiction to review the reasonableness of each such payment in the event of such an objection or dispute

12.02    Continued Execution of the Plan after Closing. After closing of the case, the Reorganized Debtor shall continue to remit Plan Payments to the recipients as provided in the Plan and shall continue to distribute funds pursuant to the terms of the Plan.

12.03    Professional Fees after Closing. After closing of the case, the Reorganized Debtor may continue to avail itself to the services of professional persons whose employment was approved at or prior to closing of the case in performance of the Plan. In the event such professional services are rendered, or expenses are incurred by any professional person therewith, an itemized bill shall be furnished by such professional person to the Reorganized Debtor, who shall promptly pay the invoices.

Respectfully Submitted,


*/s/ Ned Hildebrand*
Henry E. ("Ned") Hildebrand, IV
Gray Waldron
DUNHAM HILDEBRAND PAYNE WALDRON, PLLC
9020 Overlook Boulevard, Suite 316
Brentwood, TN 37027
629.777.6519
ned@dhnashville.com; gray@dhnashville.com
*Counsel for the Debtor*